UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GRAND DESIGN RV LLC,

    Plaintiff,

    v.

                                    Case No. 3:21-CV-25 JD

THOR INDUSTRIES INC, et al.,

    Defendants.

**OPINION AND ORDER**

Plaintiff Grand Design RV LLC raised serious allegations of unethical pre-suit conduct by one of the Defendants' attorneys in this patent infringement lawsuit. According to Grand Design, attorney Ryan Fountain, who has since withdrawn as counsel for Defendants Thor Industries, Keystone RV Company, and Jayco Inc., deliberately obtained Grand Design's privileged and confidential information, fully considered and digested it, and then used it in filing several of the Defendants' affirmative defenses as part of their Answer in this case. The information Grand Design alleges is privileged and confidential came from Mr. Fountain's conversations with Thomas Cramer, a former Grand Design employee who had hired Mr. Fountain in 2016 to counsel him during his negotiations with Grand Design about assigning his rights to one of the patents that is at issue in this infringement lawsuit. Grand Design also alleged that Mr. Fountain violated ethical rules in talking to Mr. Cramer.

In an effort to address the alleged wrongdoing, Grand Design filed a Motion to Disqualify in which it asked the Court to impose several different sanctions on the Defendants and their counsel. (DE 24.) Grand Design specifically asked that the Court: (1) disqualify Mr. Fountain and any of the Defendants' other attorneys who had access to the allegedly privileged

and confidential information; (2) strike the Defendants' affirmative defenses that relied on the

information; (3) prohibit the Defendants from further contacting Mr. Cramer or any other source

from which they obtained confidential or privileged information; and (4) require the Defendants

to reimburse Grand Design for costs. (DE 24 at 29–30.)

The Court referred Grand Design's Motion to Disqualify to the magistrate judge pursuant

to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b) "solely on the dispositive

matter raised in the [Motion to Disqualify] related to striking all affirmative defenses based on

improperly obtained information." (DE 30.) Magistrate Judge Michael G. Gotsch Sr. considered

the dispositive matter based on the specific referral and considered the other, non-dispositive

matters raised in the Motion to Disqualify based on the standing referral of non-dispositive issues

to magistrate judges in this District. He ultimately prepared a Report and Recommendation on

the request to strike in which he found there was insufficient evidence to support a finding that

the relevant information was privileged or confidential or that Mr. Fountain violated ethics rules.

However, he still recommended that the paragraphs of the Defendants' affirmative defenses that

incorporated the information Grand Design claimed to be privileged and confidential (DE 11 at

31 ¶ 7.F; 32, ¶ 7.J; 35, ¶ 8.D; 36, ¶ 8.E) be stricken, that the Clerk seal the Defendants' Answer,

and that the Defendants be given three days to file a redacted version of their Answer and

affirmative defenses. (DE 56 at 25.)

In the same decision, Judge Gotsch also ruled on the non-dispositive requests Grand

Design raised in its Motion to Disqualify. *See* (DE 56 at 1, 24–25) (titling the combined

document "Opinion & Order and Report & Recommendation" and separating his decisions into

rulings and recommendations depending on whether they responded to dispositive or non-

dispositive issues). He denied Grand Design's requests for disqualification and reimbursement of

expenses, but, despite finding there was insufficient evidence to suggest wrongdoing, he granted

Grand Design's request to prohibit use of Mr. Fountain's sources for the allegedly privileged and

confidential information as witnesses. (DE 56 at 25.) Judge Gotsch's decision also included a

ruling on a separately filed Motion to Seal from Grand Design that had sought to seal the Motion

to Disqualify as well as two attachments to the motion, all of which quoted the allegedly

privileged and confidential language used in the Defendants' Answer to some extent. (DE 25.)

Judge Gotsch ruled that the Motion to Seal should be granted as unopposed. (DE 56 at 25.)

The Opinion & Order and Report & Recommendation was entered on the docket on

March 28, 2022, giving the parties through April 12, 2022, to file any objection, pursuant to

Federal Rule of Civil Procedure 72. The Defendants filed an objection to the Opinion & Order

and Report & Recommendation. (DE 57.)[1] The objection filing agreed with Judge Gotsch's

finding that there was insufficient evidence to demonstrate that the relevant information was

privileged or confidential or that Mr. Fountain violated ethical rules, but it disagreed with Judge

Gotsch's decision to nevertheless impose sanctions on the Defendants in the form of preventing

them from using certain sources as witnesses and recommending that this Court strike portions of

the Defendants' Answer. (DE 57 at 1–2.) The Defendants' filing also objected to Judge Gotsch's

decision to grant Grand Design's Motion to Seal as unopposed because the Defendants argued

that they actually did file a response opposing the Motion to Seal long before Judge Gotsch

issued his decision. (DE 57 at 2.) Grand Design did not file any objection to Judge Gotsch's

---

[1] Because the Defendants' objection challenged both Judge Gotsch's recommendations and rulings, the Court treats the Defendants' filing, titled "Defendants' Objection to the Proposed Sanction Recommendation," as both an objection to the Report & Recommendation portion of Judge Gotsch's decision and an objection and motion for reconsideration of the Opinion & Order portion of Judge Gotsch's decision.

decision, but it did file a response to the Defendants' objections, arguing that Judge Gotsch's

recommendations and rulings imposing sanctions should not be disturbed. (DE 65.)

## I.       Standard of Review

A district court applies a different standard of review when a party objects to a

magistrate's recommendation on a dispositive issue than it does when a party objects to a

magistrate's ruling on a non-dispositive issue. *See* Fed. R. Civ. P. 72. When a party files a timely

objection to a magistrate judge's ruling on a non-dispositive issue, "[t]he district judge in the

case must consider [the] timely objections and modify or set aside any part of the [magistrate's]

order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). However, when a

party properly objects to a magistrate judge's recommended resolution to a dispositive issue

contained in a report and recommendation, a district judge applies a de novo standard of review

only to "those portions of the magistrate judge's disposition to which specific written objection is

made." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (citing *Goffman v. Gross*,

59 F.3d 668, 671 (7th Cir. 1995)); *see also* Fed. R. Civ. P. 72(b)(3). If no objection or only a

partial objection is made to the recommended disposition, the court reviews any unobjected-to

portions for clear error. *See Johnson*, 170 F.3d at 739. Under the clear error standard, a court will

only overturn a magistrate judge's ruling if the court is left with "the definite and firm conviction

that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th

Cir. 1997).

None of the parties disputed that Grand Design's request to strike the Defendants'

affirmative defenses presented a dispositive issue for which Judge Gotsch provided a

recommended resolution. (DE 30; DE 57; DE 65.) Because the Defendants only objected to

Judge Gotsch's recommendation that sanctions be imposed to resolve the request to strike and

did not object to Judge Gotsch's conclusions that there was insufficient evidence of privilege,

confidentiality, or ethical violations, the Court finds a de novo review would be appropriate for

the sanctions recommendation while a clear error review would be appropriate for the

unobjected-to conclusions on privilege, confidentiality, and ethical violations. *See* Fed. R. Civ. P.

72(b)(3); *Johnson*, 170 F.3d at 739.

Judge Gotsch reviewed and issued his decisions on Grand Design's other requests for

relief in its Motion to Disqualify, as well as Grand Design's Motion to Seal, as if they presented

non-dispositive issues. While that would generally indicate that any objections to Judge Gotsch's

rulings on those issues must be reviewed solely for clear error, *see* Fed. R. Civ. P. 72(a), the

Defendants have argued that Judge Gotsch's decision to prohibit them from using certain

witnesses should be considered dispositive here and reviewed de novo because it could deny the

Defendants a defense or claim at trial. (DE 57 at 7; DE 69 at 4) (citing *Royal Maccabees Life Ins.

Co. v. Malachinski*, 2001 WL 290308, *7 (N.D. Ill. 2001)). Grand Design disagreed, insisting

that the decision to limit witnesses was a discovery and evidentiary-based ruling and thus

remained non-dispositive for purposes of the Court's review. (DE 65 at 10) (citing *Phillips v.

Raymond Corp.*, 213 F.R.D. 521, 525 (N.D. Ill. 2003)) ("rulings on discovery or on evidence,

whether made by a Magistrate Judge without later District Judge review, or even by the District

Judge himself or herself, are *not* dispositive rulings in any sense") (emphasis in original). While

the Court acknowledges the parties' dispute, it finds that it will not have to resolve it, because the

Court would reach the same conclusion about Judge Gotsch's decision to prohibit the

Defendants' use of certain witnesses whether it reviewed the decision de novo or for clear error.

## II.     Discussion

The Defendants were the only parties in the case to file objections to Judge Gotsch's

decision.[2] Because the Defendants' objections cover Judge Gotsch's decisions on two Grand

Design motions, the Court will break its analysis down into two, motion-based categories.

The first category will cover the Defendants' objections to Judge Gotsch's rulings on

Grand Design's Motion to Disqualify. The Defendants, in their filed objection, did not question

any of the underlying reasoning in Judge Gotsch's decision related to his finding that there was

insufficient evidence of privilege, confidentiality, or ethical violations. (DE 56); (DE 57 at 1)

(explaining that the Defendants believe "[t]he Magistrate's order correctly concludes that [the

Defendants] did not publish Grand Design's confidential or privileged information in their

Answer and that Defendants' counsel did not act unethically or recklessly"). They also agreed

with Judge Gotsch's decision to deny Grand Design's request to disqualify counsel and deny

Grand Design's request to be reimbursed. (DE 57 at 1.) The only aspect of the decision with

which the Defendants' disagreed was Judge Gotsch's conclusion that sanctions were appropriate.

(*Id.* at 1–2.) Grand Design responded to the Defendants' objections by defending Judge Gotsch's

decisions about sanctions, arguing that the decision was "not clearly erroneous or contrary to

law" (DE 65 at 6) and that "[t]he recommended sanctions . . . are narrowly tailored to preserve

the integrity of this proceeding, the integrity of the bar, and deter future misconduct" (*id.* at 9).

---

[2] The Court notes that Mr. Fountain also filed an objection with the Court on the same day that he filed an ultimately successful motion to withdraw as counsel for the Defendants (DE 60; DE 62). Mr. Fountain's objection covered much the same ground that the Defendants' objection did and appeared to be Mr. Fountain's attempt to have his side of things heard and put on the record before he left the lawsuit. (DE 60 at 2–3.) The Court has read through Mr. Fountain's filing and understands his objections and disagreements, particularly with what Mr. Fountain described as the "elemental findings and apparent inferences" (DE 60 at 7) within Judge Gotsch's order that he argued were wrong and potentially damaging to his professional status. The Court finds that it does not need to specifically address Mr. Fountain's objections though. The Defendants' own objections cover the same overall topics and will lead the Court, without needing to adopt all of the dicta that Mr. Fountain described as "elemental findings and apparent inferences," to agree with Mr. Fountain and the Defendants that Judge Gotsch's "overall conclusion" that Mr. Fountain "did not engage in misconduct," (DE 60 at 7), was correct and that sanctions are inappropriate.

The second category will cover the Defendants' objection to Judge Gotsch's decision to grant Grand Design's Motion to Seal portions of the Motion to Disqualify and its attachments. Judge Gotsch granted the motion in the second-to-last sentence of his Opinion & Order and Report & Recommendation after explaining in an associated footnote that the Motion to Seal was "uncontested" because "Defendants filed no response to Grand Design's Motion to Seal." (DE 56 at 25, n.6.) The Defendants' objection alleged that finding was clearly erroneous because the Defendants did file a response opposing the Motion to Seal nearly a year before Judge Gotsch issued his decision. (DE 40); (DE 57 at 2). Grand Design, in its response, once again sought to uphold Judge Gotsch's decision, arguing for the first time that the Defendants' response to the Motion to Seal need not have been considered because it was not timely filed. (DE 65 at 23.)

### 1.    *Motion to Disqualify sanction objections*

As described above, the Motion to Disqualify put both dispositive and non-dispositive issues before the magistrate judge. Grand Design, in its motion, asked the Court to: (1) disqualify Mr. Fountain and any other of the Defendants' attorneys who had access to the allegedly privileged or confidential information; (2) strike the Defendants' affirmative defenses that rely on the allegedly improperly obtained information; (3) prohibit the Defendants from using Mr. Cramer or any other source from which they obtained confidential Grand Design information as witnesses; and (4) require the Defendants to reimburse Grand Design for costs. (DE 24 at 29–30.) The only portion of Judge Gotsch's decision resolving those requests that the Defendants specifically disputed was the portion that imposed sanctions despite finding insufficient evidence that the information at issue was privileged or confidential or that Mr. Fountain violated any ethical rules.

The Court begins by reviewing the unobjected-to reasoning in Judge Gotsch's decision that led him to find that there was insufficient evidence of privilege or confidentiality in the communications and insufficient evidence of any ethical violations by Mr. Fountain. Grand Design's Motion to Disqualify identified four "Items," or excerpts, within the Defendants' Answer that allegedly contained privileged and confidential information. Two paragraphs included in the Answer described "communication[s] between Mr. Cramer and Plaintiff's counsel when they were adversely situated and negotiating the 2016 Assignment." (DE 56 at 6.) Referred to as "Item A," the first paragraph described a communication in which Mr. Cramer advised Grand Design of his opinion about the impact of relevant prior art on one of the patents at issue in this lawsuit. (*Id.*) The second paragraph, referred to as "Item B," incorporates information from a communication between Mr. Cramer and Grand Design's counsel that allegedly resulted in the scope of the disputed patent application being crafted based on Mr. Cramer's opinion. (*Id.*) Two additional paragraphs in the Defendants' Answer associated with a separate affirmative defense included information taken from communications between Mr. Cramer and Grand Design's non-lawyer business managers prior to 2016 while Mr. Cramer was a Grand Design employee. One paragraph, referred to as "Item C," alleges that prior to 2016, Mr. Cramer understood that Grand Design did not want to pursue his invention due to cost concerns, and a second paragraph, referred to as "Item D," indicates that prior to 2016, Mr. Cramer understood that Grand Design did not want to patent inventions that could benefit the entire recreational vehicle industry. (*Id.*)

As Judge Gotsch accurately summarized, "Grand Design's Motion to Disqualify is premised on allegations that Mr. Fountain deliberately, and inappropriately, obtained its privileged and confidential information from Mr. Cramer and then incorporated that

information—as reflected in Items A–D—into Defendants' affirmative defenses." (DE 56 at 8.)

That conduct, according to Grand Design, raised issues of privilege, confidentiality, and ethics.

(DE 24.) The Court finds that Judge Gotsch carefully considered the merits of the privilege,

confidentiality, and ethical violation arguments Grand Design put forward based on the inclusion

of Items A through D in the Defendants' Answer and did not reach any clearly erroneous

conclusions.

> a.     Privilege[3]

"The attorney-client privilege protects communications made in confidence by a client to

his attorney in the attorney's professional capacity for the purpose of obtaining legal advice."

*Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007). Privilege is intended "to encourage full

and frank communication between attorneys and their clients and thereby promote broader public

interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. But

privilege is also "an obstacle to the investigation of the truth," *Radiant Burners, Inc. v. Am Gas

Ass'n*, 320 F.2d 314, 323 (7th Cir. 1963), and "[t]he party claiming the privilege bears the burden

of establishing that all of the requirements for invoking the attorney-client privilege are met,"

*Gingerich v. City of Elkhart Prob. Dep't*, 273 F.R.D. 532, 538 (N.D. Ind. 2011) (citing *United

States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)); *see also In re Queen's Univ. at Kingston*,

820 F.3d 1287, 1301 (Fed. Cir. 2016) ("The burden of determining which communications are

---

[3] The parties disputed whether Seventh Circuit or Federal Circuit law should apply to the privilege analysis. (DE 39;
DE 47). The Court concurs with Judge Gotsch in finding that resolving that dispute is unnecessary because
"[r]egardless of which Circuit's law applies, the same basic analysis ensues—review each communication
individually and determine whether it was made confidentially by a client to an attorney for the purpose of obtaining
legal advice or services." (DE 56 at 12) (citing *Upjohn v. United States*, 449 U.S. 383, 389 (1981); *In re Spalding
Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000)).

privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege.").

Judge Gotsch broke his consideration of the issue of privilege down into two parts. First, he considered whether the conversations that gave rise to the information in Items C and D could be considered privileged based on the record presented. Judge Gotsch determined that the evidence showed that "Items C and D only reference[d] communications between Mr. Cramer and Grand Design's senior management," (DE 56 at 10) (citing DE 39 at 4), and that "no attorney was involved in the conversations." (DE 56 at 11.) He additionally found that the evidence did not sufficiently suggest that the conversations were connected with giving or obtaining legal advice such that privilege would attach. (*Id.*) (citing *Jenkins*, 487 F.3d at 490). The Court, after reviewing the parties' briefing and the available record at this stage of the proceedings, finds no clear error in that assessment and thus adopts it as its own.

Second, Judge Gotsch went on to address whether privilege could potentially apply to the conversations that gave rise to the information in Items A and B, which did involve information gleaned from conversations between Mr. Cramer and Grand Design's attorneys. Judge Gotsch ultimately found that Grand Design failed to establish that the conversations between Mr. Cramer and the Grand Design attorneys triggered attorney-client privilege. The primary reason for that conclusion was the uncertainty, based on the available record and Mr. Cramer's adverse position during his negotiations with Grand Design's counsel, about the capacity in which Mr. Cramer engaged in the conversations. The available evidence the parties presented did not make clear that Mr. Cramer's communications with Grand Design lawyers were within the scope of his employment with Grand Design, were meant to help Grand Design's attorneys offer legal advice to Grand Design in some way, or were otherwise carried out in a way that would have caused

10

privilege to attach. (DE 56 at 12–16) (citing *Upjohn*, 449 U.S. at 393; *Spalding*, 203 F.3d at 805;

*Univ. of W. Va. Bd. Of Trs. v. VanVoorhies*, 278 F.3d 1288, 1304 (Fed. Cir. 2002)) ("Without

more, Grand Design has not shown that the communications referenced in Items A and B were

made in the context of an attorney-client relationship"). Because of that uncertainty, Judge

Gotsch found that Grand Design had "not met its burden to establish that the relevant [Item A

and B] communications between Mr. Cramer and Grand Design's counsel were privileged." (DE

56 at 16) (citing *Gingerich*, 273 F.R.D. at 538; *White*, 950 F.2d at 430). The Court, after

reviewing the parties' briefing and the available record at this stage of the proceedings, finds no

clear error in that assessment and thus adopts it as its own.

        b.      *Confidentiality*

     Judge Gotsch reached a similar conclusion with regard to whether the information Mr.

Fountain received from Mr. Cramer was confidential. Agency principles establish a "common

law duty [that] obligates an employee to protect any confidential information entrusted to him by

his employer during his employment . . . and after his termination" regardless of any contractual

agreement to do so. *Overwell Harvest Ltd. v. Widerhorn*, 2021 WL 5049777, at *7 (N.D. Ill.

Nov. 1, 2021) (quoting *S.E.C. v. Cherif*, 933 F.2d 403, 411 (7th Cir. 1991). Grand Design

argued, and continued to argue in its response, that Mr. Cramer was bound by such a duty of

confidentiality because Mr. Cramer was an employee of Grand Design. But as Judge Gotsch

correctly found, Grand Design failed to offer sufficient evidence that the information Mr. Cramer

obtained and shared with Mr. Fountain was actually confidential in the first place such that Mr.

Cramer was bound by any common law duty or obligation. (DE 56 at 16–18, n.5.)[4] The Court

---

[4] Judge Gotsch also noted that Grand Design did not cite, and he could not find, any caselaw that actually enforced a common law duty to maintain confidentiality absent some other binding agreement that required an employee to do

has reviewed the parties' briefing, including Grand Design's continued insistence that the

conversations were confidential (DE 65), as well as the available record to date. Based on that

review, it finds no clear error in Judge Gotsch's unobjected-to confidentiality assessment. The

available record falls short of showing that any of the information Mr. Cramer shared actually

qualified as confidential information and also demonstrates that Mr. Cramer was not operating

under any binding confidentiality agreement. (DE 56 at 16) (noting the absence of a

confidentiality agreement). The Court therefore adopts Judge Gotsch's findings on

confidentiality as its own based on the insufficient record offered at this stage of the proceedings.

Before moving on to Judge Gotsch's findings on alleged ethical violations, the Court

briefly addresses Grand Design's characterization of Judge Gotsch's decision as appearing "to

defer a final decision on the issue" of privilege and confidentiality. (DE 65 at 15.) The Court

finds that this argument from Grand Design is based on a piecing together of disconnected dicta

from Judge Gotsch's decision to suggest Judge Gotsch reached a conclusion that he did not in

fact reach. (DE 65.) A review of Judge Gotsch's filed decision demonstrates that he concluded

with finality that "Grand Design has not shown that the communications referenced in Items A

and B were made in the context of an attorney-client privilege relationship or that they were

made in confidence (DE 56 at 15–16), that "Items C and D are not privileged" (DE 56 at 11), and

that Grand Design failed to demonstrate that the communications relevant to Items C and D

contained confidential information, (DE 56 at 18). Judge Gotsch then made his conclusions even

clearer later in his decision when he specifically stated that "the record does not, as presented,

establish that the Cramer/Grand Design communications at issue in Items A–D are privileged or

---

so. (DE 56 at 17, n.5) (citing *Cherif*, 933 F.2d at 411 ("integrity policy" and common law duty); *PRG Schultz Int'l, Inc. v. Kirix Corp.*, 2003 WL 22232771 (N.D. Ill. Sept. 22, 2003) (employment handbook); *Overwell*, 2021 WL 5049777, at *2 (non-disclosure and restrictive covenant provisions of employment agreement)).

confidential." (DE 56 at 23.) The Court therefore finds that, contrary to what Grand Design has

argued, Judge Gotsch did reach a final decision on privilege and confidentiality in his decision.

And for the reasons explained above, the Court adopts those findings.

> c.      *Ethical Violations*

Judge Gotsch also addressed Grand Design's assertion that Mr. Fountain breached his

ethical obligations when he gathered information from Mr. Cramer and used that information to

construct several of the Defendants' affirmative defenses in their filed Answer. Grand Design

had specifically argued that Mr. Fountain violated ABA Model Rules 4.2, on communication

with a person represented by counsel, and 4.4(b), on respect for rights of third persons, as well as

Rule 1.9 of the Indiana Rules of Professional Conduct, on duties to former clients. (DE 24 at 22–

25; DE 47 at 18–20.) The alleged violations were tied to Grand Design's belief that Mr. Fountain

had handled privileged or confidential information, interviewed an opposing party's former

employee, and was litigating the invalidity of a patent whose named inventor was a former

client. (*Id.*)

As Judge Gotsch recognized, the "Court's inherent power, authority, and duty to ensure

the administration of justice and the integrity of the litigation process," allows it to prohibit an

attorney from obtaining and using information belonging to a company outside the protections of

the discovery process. (DE 56 at 19) (citing *Arnold v. Cargill, Inc.*, 2004 WL 2203410, at *6 (D.

Minn. Sept. 24, 2004). The law limits attorney communications with an opposing party's former

employees to non-confidential and non-privileged information. *Taylor v. Cook Cnty. Sheriff's

Off.*, 2020 WL 1047053, at *2 (N.D. Ill. Mar. 4, 2020); *Harris Davis Rebar, LLC v. Structural

Iron Workers Loc. Union No. 1, Pension Tr. Fund*, 2019 WL 447622, at *6 (N.D. Ill. Feb. 5,

2019). And Indiana Rule of Professional Conduct 1.9 prohibits representation of a client "in the

same or a substantially related matter in which [the client's] interests are materially adverse to

the interests of [a] former client unless the former client gives informed consent, confirmed in

writing." Ind. R. Prof'l Conduct 1.9; *see also Hobson v. Trans Union, LLC*, 2013 WL 2443917,

at *2 (N.D. Ind. June 5, 2015).

In analyzing the record before him, Judge Gotsch found that while Mr. Fountain may

have approached the line of violating the ethical rules Grand Design specified, he never crossed

it. (DE 56 at 23) ("And while Mr. Fountain's conduct treads close to the ethical lines demarcated

to curb attorney behavior, the record does not reflect clear ethical violations or even reckless

conduct."). Judge Gotsch's conclusion about the lack of any ethical violation was based in part

on the fact that Model Rules 4.2 and 4.4(b) were not implicated because Grand Design failed to

establish that any of the information shared between Mr. Cramer and Mr. Fountain was

privileged or confidential. (DE 56 at 20.) It was also based on Judge Gotsch finding that Indiana

Rule of Professional Conduct 1.9 was not implicated because Mr. Cramer has no ongoing

interest in protecting the patent at issue after he already assigned it and therefore cannot be

considered "adverse" to the Defendants who are now attacking the validity of that patent through

this lawsuit. (DE 56 at 22–23); *see also Hobson*, 2013 WL 2443917 at *2. The Court, after

reviewing the parties' briefing and the available record, finds no clear error in these unobjected-

to findings and adopts Judge Gotsch's finding that Mr. Fountain did not break any ethical rules

as its own. *See* Fed. R. Civ. P. 72.

### d.     Objection to sanctions imposed

Having considered and adopted each of Judge Gotsch's unobjected-to conclusions with

regard to privilege, confidentiality, and ethical violations, the Court finally moves to the portion

of Judge Gotsch's decision that was the source of the Defendants' objection, the portion that

recommended and imposed sanctions despite having found insufficient evidence of privilege, confidentiality, and ethical violations. (DE 57.) Judge Gotsch found that sanctions were needed "to protect the integrity of [the] proceeding and deter future misconduct." (DE 56 at 23–24.) The Defendants argued that the sanctions, whether they were recommended or directly ordered, were improper and unsupported "because there is no willful misconduct or bad faith to support" them. (DE 57 at 2.)

While Judge Gotsch did not specifically describe the source of his power to order or recommend the sanctions, the parties here, as well as this Court, agree that, in the absence of a specific statute or regulation, the only source of power that could have supported Judge Gotsch's recommendation and ruling was a court's inherent authority to sanction. (DE 65 at 11, n.2); (DE 69 at 8). That inherent authority is part of a court's duty "to manage judicial proceedings and to regulate the conduct of those appearing before it." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *see also Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018). Exercise of that inherent authority requires that the sanctions be based on a finding that the culpable party "willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez*, 845 F.3d at 776; *see also Fuery*, 900 F.3d 450. Bad faith conduct for purposes of sanctions refers to conduct that is either intentional or in reckless disregard of the law or a court's order. *See Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).

The Court must exercise its inherent power to sanction with restraint and must ensure that the sanctions are proportional to the misconduct. *Evans v. Griffin*, 932 F.3d 1043, 1047 (7th Cir. 2019); *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993) (holding that district court abused its discretion by dismissing the case when counsel's conduct did not involve a clear violation of procedural or ethical rules). And "[i]n deciding what measure of sanctions to impose,

15

the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process." *Doston v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).

Judge Gotsch's recommendation and ruling imposing sanctions does not appear to be based on any specific wrongdoing that Mr. Fountain engaged in. There was no clear explanation given for the sanctions other than the "lesser sanctions" being needed "here to protect the integrity of this proceeding and deter future misconduct." (DE 56 at 24.) The fact that Judge Gotsch did not tie the sanctions he imposed and recommended to any specific part of what Mr. Fountain or the Defendants actually did during these proceedings is troubling. And while the Court recognizes that Judge Gotsch's sanction in the form of striking part of the Defendants' Answer was objected to as a recommendation on a dispositive issue, and thus would generally require de novo review, the Court finds that both the recommended sanction to strike and the imposed sanction to prohibit use of certain witnesses would need to be reversed even under the more deferential clear error standard.

In short, there is no legal basis, given the findings Judge Gotsch made and the Court has adopted, to justify imposing the sanctions described in the Opinion & Order and Report & Recommendation. A sanction pursuant to a court's inherent authority "must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *See Ramirez*, 845 F.3d at 776. Both Judge Gotsch and this Court have failed to find any bad faith here. *See* (DE 56 at 23) (finding that the record does not "establish that the Cramer/Grand Design communications at issue in Items A–D are privileged or confidential" and "does not reflect clear ethical violations or even reckless conduct"). Without any finding of privilege, confidentiality, ethical violations, or other bad faith conduct, the Court is left with the definite and firm conviction that a mistake was made when Judge Gotsch found

16

sanctions appropriate. *See Weeks*, 126 F.3d at 943; *see also Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012) ("Without a finding that [the defendant] acted in bad faith or engaged in misconduct, the district court sanctioned him . . . . This is precisely the sort of sanction that is outside the court's inherent power and that we have cautioned against in the past."); *Marrocco*, 966 F.2d at 224 (defining "bad faith" as conduct that is either intentional or in reckless disregard of the law or a court's order).

Grand Design disagreed with this result in its response to the Defendants' objection, but its disagreement was largely based on a repetition of the privilege, confidentiality, and ethical arguments that it originally raised in its briefing on the Motion to Disqualify. *See* (DE 24; DE 47; DE 65). Those arguments were already heard and resolved in Judge Gotsch's Opinion & Order and Report & Recommendation, and Grand Design did not file any objection to Judge Gotsch's resolution of those issues. In fact, Grand Design labeled Judge Gotsch's decision "far from" erroneous when explaining its agreement with the sanctions that the decision recommended and imposed. (DE 65 at 6.) The Court thus maintains its conclusion here that Judge Gotsch's decision and recommendation to impose sanctions based on the allegations in Grand Design's Motion to Disqualify was clearly in error. The Court will therefore not follow Judge Gotsch's recommendation to strike any affirmative defense paragraphs and will set aside the sanction that would have prohibited use of Mr. Fountain's sources for the information in Items A through D as witnesses for the Defendants.

### 2.    *Motion to Seal*

Having resolved the Defendants' objections to Judge Gotsch's decision on Grand Design's Motion to Disqualify, the Court moves to the Defendants' related objection to Judge Gotsch's decision on Grand Design's Motion to Seal. In that motion, Grand Design requested

that the Court seal its Motion to Disqualify and two of three attachments to the Motion to

Disqualify that contained email correspondence between Grand Design's counsel and Mr.

Fountain. Grand Design argued sealing was necessary because the Motion to Disqualify and the

relevant attachments "reference[] statements included in Defendants' Answer, which describe

alleged discussions regarding patentability between Thomas Cramer and Grand Design's

attorneys" that were privileged and confidential. (DE 25 at 2.) Judge Gotsch granted Grand

Design's Motion to Seal at the very end of his Opinion & Order and Report & Recommendation,

writing "[l]astly, Grand Design's uncontested Motion to Seal portions of its Motion to Disqualify

is GRANTED." (DE 56 at 25.) Judge Gotsch included a footnote after "uncontested," stating that

the "Defendants filed no response to Grand Design's Motion to Seal." (DE 56 at 25, n.6.) The

Defendants argue Judge Gotsch's ruling was clearly in error because they did file a response to

Grand Design's Motion to Seal.

The Court agrees with the Defendants and finds that Judge Gotsch's ruling on Grand

Design's Motion to Seal was in error because it ignored the Defendants' response in opposition

to that motion, which had been on the docket for almost a year before Judge Gotsch issued his

decision. (DE 40.) The Defendants' docketed response opposed sealing the Motion to Disqualify

and the two attachments for the same reasons the Defendants opposed the Motion to Disqualify

itself, namely that there was insufficient evidence that the disputed information was privileged or

confidential and insufficient evidence that Mr. Fountain had violated any ethical obligations.

(*Id.*) The Court additionally notes that Grand Design filed a reply in further support of its motion

to seal after the Defendants' filed their response (DE 48), something Judge Gotsch also did not

acknowledge. Judge Gotsch gave no explanation for granting Grand Design's Motion to Seal

other than the implicit assumption, based on his characterization of the motion as uncontested

and the footnote erroneously stating that the Defendants did not file a response, that he

understood the motion to be unopposed. Judge Gotsch's decision to grant the Motion to Seal as

uncontested was thus clearly in error in that it ignored the Defendants' filed response as well as

Grand Design's filed reply. *See Weeks*, 126 F.3d at 943.[5]

Given the finding of clear error with regard to the Motion to Seal, the Court sets aside

Judge Gotsch's ruling and goes on to find that the Motion to Seal should be denied given the

other conclusions the Court has reached in this order. The Motion to Seal was premised on

Grand Design's belief that the conversations supporting some of the affirmative defenses laid out

in the Defendants' publicly filed Answer, specifically those conversations underlying Items A

through D, were privileged and confidential and thus rightfully kept from public view. (DE 25;

DE 48.) But as Judge Gotsch held and the Court has confirmed here, the available record does

not support finding that the conversations were in fact privileged or confidential. (DE 56 at 23–

24.) Further, while not dispositive of the issue on its own, the Court agrees with the Defendants

that granting the Motion to Seal while the allegedly offending information quoted in the filings

Grand Design wanted to seal is still readily accessible in the Defendants' publicly filed Answer

would be illogical.[6] (DE 40 at 2) (arguing that sealing the Motion to Disqualify while the

---

[5] The Court notes that Grand Design, in its response to the Defendants' objections to Judge Gotsch's decision, argued that Judge Gotsch's order correctly granted the motion to seal because the Defendants did not timely file any opposition. (DE 65 at 23.) While Grand Design is correct that a text order granting the parties' joint motion to extend the filing deadlines for the Motion to Disqualify and Motion to Seal (DE 34) did not specifically mention the Motion to Seal, the Court finds the Defendants' argument unavailing. The motion to which the order responded was a joint motion that clearly encompassed extensions for briefing on *both* the Motion to Disqualify and the Motion to Seal (DE 33). Further, the Defendants met the agreed filing deadline laid out in that approved joint motion (DE 34; DE 40) and Grand Design did not raise any concerns about lack of timeliness when filing its reply (DE 48). Additionally, Judge Gotsch made no mention of timeliness as a reason for granting the Motion to Seal as uncontested. (DE 56 at 25.)

[6] The Court understands that Grand Design envisioned its Motion to Disqualify leading to the offending portions of the Answer being stricken, which would have made its Motion to Seal a logical extension of its Motion to Disqualify, but those portions of the Answer will not be stricken given the other conclusions in this order.

Answer is publicly available would be "futile"). Therefore, the Court, in line with the rest of this opinion and order, sets aside Judge Gotsch's objected-to ruling granting Grand Design's Motion to Seal based on a finding of clear error and concludes that the motion should instead be denied. *See* Fed. R. Civ. P. 72(a).

## III.    Conclusion

For the foregoing reasons, the Court GRANTS the relief requested in Defendants Thor Industries, Keystone RV Company, and Jayco Inc.'s Motion for Review of Magistrate Judge Decision (DE 57). Grand Design's Motion to Disqualify is DENIED in full. In denying Grand Design's Motion to Disqualify (DE 24), the Court DECLINES the Magistrate's recommendation to strike the paragraphs incorporating Items A through D and further DECLINES the Magistrate's recommendation to direct the Clerk to seal the Defendants' Answer. (DE 56.) Finally, the Court sets aside the Magistrate's ruling on Grand Design's Motion to Seal and further DENIES Grand Design's Motion to Seal (DE 25). The Clerk is directed to remove the current seal on Grand Design's Motion to Disqualify and the accompanying attachments (DE 24; DE 24-1; DE 24-2).

SO ORDERED.

ENTERED: September 13, 2022

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court

20